CRISTÓBAL DÁVILA, Plaintiff and Appellee, *v.* FRANCISCO TORRES, JR., Defendant and Appellant.

No. 8028. Argued May 16, 1941.—Decided June 13, 1941.

*Leopoldo Tormes García,* for appellant. *R. Hernández Matos,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This appeal was decided by judgment of November 12, 1940, which reversed the judgment appealed from. *Dávila* v. *Torres,* 57 P.R.R. ___.

A motion for rehearing was filed, and the parties were heard on the merits of the same. On February 3, 1941, the judgment of November 12 was vacated and a new hearing of the appeal was set for and held on May 5, at which only the appellant was present. The appellee was granted 15 days within which to file an answer to the supplementary brief filed by the appellant, which he did.

This suit began by complaint filed in the Municipal Court of Ponce by Cristóbal Dávila, which contains the following averments:

"2d. That some time ago the plaintiff sold and delivered to the defendant who bought and received them on current account between them, merchandise and other objects of commerce and that said current account having been recently liquidated, it showed a balance in favor of the plaintiff amounting to the sum of $421.06, which balance was submitted to the defendant and approved and accepted by him.

"3d. That although said account is due, the defendant has not paid the aforesaid balance of $421.06 to the plaintiff, in whole or in part, and refuses to pay it notwithstanding the efforts made for collection and that the debt is liquid, due, and demandable."

The defendant answered:

"1. The first averment of the complaint is accepted except where it states that the defendant is a resident of Ponce, and it is alleged that he lives in Cayey.

"2. Defendant accepts that the plaintiff Cristóbal Dávila, out of his warehouse as a wholesale dealer in groceries, established in Cayey, sold to the defendant as retail dealer in groceries, also established in Cayey, merchandise for a period of time previous to December 30, 1931, and that on that same day the balance of said account for the groceries sold by the plaintiff to the defendant amounted to $421.06, and the defendant alleges as defense that said amount was paid by the defendant to the plaintiff, and that the defendant at present owes nothing to the plaintiff on any account.

"3d. The third averment of the complaint is denied, and it is to the contrary alleged that the defendant owes nothing to the plaintiff on the account stated in the complaint, or on any other account."

And as special defenses the defendant alleged that the complaint did not state sufficient facts to set out a good cause of action, and that in any event, the action exercised in it was barred by the Statute of Limitations, according to paragraph 4 of Section 1868 of the Civil Code.

The case was decided and an appeal was taken to the district court. The trial *de novo* set by law having been held, said court found for the plaintiff and the defendant appealed to this Court.

The reversal of the judgment appealed from was ordered on the grounds of the prescription of the action. "The essential question in this case is whether the traffic in which a wholesale dealer is engaged is different from the traffic in which the retailer is engaged," we stated at the moment, and copying from the law, making reference to the definitions of the words "trade" and "traders" cited by the parties, and applying the maxims *Interest republicæ ut sit finis litium* y *Ad ea que frequentius accident jura adaptantur*, we said: "We think the business of a wholesaler is a different kind of business from a retailer and the prescription of three years should avail the defendant." Following that

rule we decided the case without an absolute conviction, as may be seen from what was expressed before applying the last maxim, to wit: "If the reasoning alleged on one side or the other is something like fifty per cent . . ."

When the motion for rehearing was filed, we seriously doubted whether the rule established was well grounded and we reopened the case for a new hearing. By virtue thereof we have become convinced that in fact it is not well grounded, and this being so it is our clear duty to overrule it.

The facts were established by stipulation. Cristóbal Dávila, the plaintiff, at the time he sold groceries to the defendant Francisco Torres, Jr., was a *trader* established in Cayey in the *trade of groceries in general at wholesale and retail,* and Francisco Torres, Jr., was a *trader in groceries at retail,* also established in Cayey. The *business transacted of sale of groceries* took place between the first one as *wholesale dealer in groceries* and the second one as *retail dealer in groceries.*

The statute cited by the defendant in support of his argument is paragraph 4 of Section 1867 of the Civil Code (1930 ed.), which provides:

"Actions for the fulfilment of the following obligations shall prescribe in three years:

" *       *       *       *       *       *       *

"4. For the payment of board and lodging to innkeepers, and to traders for the value of goods sold to others who are not traders, or who, being such, are engaged in a different trade."

There is no doubt that both parties were traders, that is, merchants, and it is evident that they were not engaged in a different trade but in the same trade on a different scale.

*Trader* is equivalent to *merchant,* the person who, with legal capacity, is engaged in the exercise of commerce and who deals with salable merchandise whether at wholesale or retail; this is the definition given by the *Enciclopedia Jurídica Española,* volume 22, page 235, tit. *Mercader.*

■ And *trade* is the action of *trading* which according to the same authority, consists in making business or transactions with money, buying or selling or making other business dealings. *Enciclopedia Jurídica Española,* volume 30, page 89, tit. *Tráfico.*

Were plaintiff and defendant engaged in different trades? We have already said they were not. Both were engaged in the *trade of groceries* which in this island means victuals, foodstuffs, only they did so on a different scale, and that implies no distinction in the object of their business. The trade on a specific subject is the same whether at wholesale or retail, according to 63 C. J. 762. More specifically, it is stated at page 760:

" 'Traffic' is the passing of goods or commodities from one person to another for an equivalent in goods or money; . . . It necessarily includes all the incidents of such business and trade at wholesale ur retail, and the delivery of the subject of the traffic."

The district court reasoned out very well in the opinion which served as a basis for its judgment, as follows:

" 'Different trade' is different business. But, what is understood by *différent trade* or different business? Does it mean by any chance that because of the fact that two merchants are engaged, one in a wholesale business and the other in the retail business, it is sufficient to classify them in two different business fields? We do not think so. A wholesale dealer in perfume is engaged in a different trade than a wholesale dealer in furs; a *merchant, dealer* or *trader* at retail in hardware is in a *different trade* or *different commerce* than the retail dealer in drugs. The fact that he is a *retail* or a *wholesale* dealer does not mean that the trade is different or separate."

In truth, the question had already been decided by this Court in *González* v. *Aldarondo,* 47 P.R.R. 147, 150, although it was raised for another reason and without discussing whether the business was performed wholesale or retail, in the following terms:

"It transpires that both grantor of the plaintiff and the defendant were provision merchants and in the same trade, and hence

prescription of three years does not apply. Under these circumstances we agree with the appellee that no term of special prescription is fixed by the Civil Code and that the right of action would exist for fifteen years."

What is provided by the Patent Law of 1914 does not have the scope which the defendant gives to it. The purpose of said law—Act No. 26 of March 28, 1914, Laws of 1913–14, p. 180—was to classify the different businesses with the object of scaling the price of the license in harmony with the volume of business, not to decide that dealers in the same merchandise were engaged in substantially different businesses because they transacted operations at wholesale or retail.

The reason for the exception, the motive of the legislator to include in the prescriptive term only the price of merchandise sold by traders to persons not engaged in commerce, or to those who being traders were engaged in a different trade, arises from the following comment made by Manresa to the equivalent provision of the Spanish Civil Code:

"As results from a mere comparison of the language, the limits of this rule of prescription established in the laws of the *Novísima Recopilación* to which we have made reference, have been enlarged in the Code, extending it to all the sales performed by all the merchants in general, *with exception only of those sales made to merchants in the same line of business, which exception is based in a reason of convenience easily understood, to the benefit of commerce to facilitate trade and the development thereof.*" Manresa, *Comentarios al Código Civil Español*, vol. 12, p. 791. (Italics supplied.)

The relation of confidence and continuity which exists between merchants engaged in the same trade who transact business with each other, is not the same as that which arises from the transactions made by merchants with other persons who are not in trade or who trade in different merchandise. That is the reason for the difference.

Besides, before a prescriptive rule can be applied to a specific obligation, the latter must be clearly included in

the statute of limitations, since the application thereof causes the effect of extinguishing the obligation, to the prejudice of the party in whose favor it should be fulfilled. And in this case it would at least have to be acknowledged that the application of the rule to the facts of the same is not clear according to its letter and its spirit.

"On the other hand it is a familiar principle that a statute of limitations should not be applied to cases not clearly within its provisions; it should not be extended by construction . . ." 37 C. J. 689, 691.

Although the defendant-appellant, in his original brief which served as a basis for the first hearing on the appeal, recognized that the second assignment of error was not correct, he maintains now, in his supplementary brief, that it is correct, and he also raises an issue which was not brought before the lower court, the defense of novation.

As has been said before, the defendant, in his answer, alleged to have paid the debt claimed from him. At the trial both parties stipulated that the following should be held proven:

"That the transactions of purchase and sale of groceries between plaintiff and defendant were carried on a current account which was closed on December 23, 1931, . . . for the amount of $421.06. That around that date, the defendant Francisco Torres, Jr., endorsed in favor and to the order of the plaintiff Cristóbal Dávila, and delivered to him in payment of said balance, two drafts, the first one for $300 executed by Evaristo Ostolaza on August 9, 1931, in favor of and to the order of the defendant Francisco Torres, Jr., and the other one executed by Agustín and J. M. Aponte in Cayey, P. R., on August 24, 1931, for the sum of $200, both addressed to Tabacaleros de Cayey, Inc., at Cayey, P. R., in the following terms:

" 'Tabacaleros de Cayey, Inc., Cayey, P. R.—Gentlemen: Please pay to Francisco Torres, Jr., or at his order, in his residence in this town, the amount of $300 from the remainder that may result in my favor when the tobacco which I have deposited in your warehouses is sold or liquidated. Very truly yours, (Sgd.) Evaristo Ostolaza.'

" 'Tabacaleros de Cayey, Inc. Cayey, P. R.—Gentlemen: Please pay to Francisco Torres, Jr., or at his order, in his residence in this town, the amount of $200 from the remainder that may result in my favor when the tobacco which I have deposited in your warehouses is sold or liquidated. Very truly yours, (Sgd.) Agustín and J. M. Aponte.'

"That Cristóbal Dávila made no judicial effort to collect the amount of the aforesaid drafts, but made extrajudicial efforts for their collection, and did not obtain their payment because of the bankruptcy of the draftee."

The witness Mario Torres was then summoned to the stand. On cross-examination by the defendant he answered:

"Those drafts signed by Ostolaza and by Agustín and J. M. Aponte, in whose possession are they?—They must be in possession of the municipal court.— . . .—When Torres, the defendant, endorsed the two drafts to Cristóbal Dávila, for what reason did he do it?—So that they would be credited to the account as soon as collected.—Did Cristóbal Dávila endorse them to somebody else?—They were not endorsed; they are not documents; it is not a promissory note, it was only an order."

And on examination by the plaintiff he answered:

"Do you know if the tobacco deposited by Evaristo Ostolaza was sold?—It was sold by Tabacaleros de Cayey.—Did Evaristo Ostolaza had a balance in his favor?—He owed something.—And Agustín and J. M. Aponte, do you know if they had a credit balance?—One of them had a very small balance; something like 25 or 30 dollars.—And the other one?—He had nothing left."

The defendant himself testified in part, as follows:

"As to those two drafts; that signed by Evaristo Ostolaza and that by Agustín and J. M. Aponte, in your favor, and endorsed by you to Cristóbal Dávila, did you have something to do with Cristóbal Dávila in 1931?—Cristóbal Dávila called me at that time and asked me if I could get him two drafts with the Banco Tabacalero to cover the account I owed him. I then asked Cristóbal Dávila if he accepted those orders in payment of my debt to him and then he said yes. Then I told him: 'Within two or three days I will try to obtain those orders.' I then spoke with Mr. Evaristo Ostolaza, who owed me a balance in my store and with Agustín and José M. Aponte and

they gave me the two drafts.—. . . .—After you delivered the drafts to Don Cristóbal did you again speak with him?—Then, when I knew about the Banco Tabacalero and Mr. Evaristo Ostolaza and Agustín Aponte, according to the tobacco liquidation they expected, then I spoke with Cristóbal Dávila and I told him: 'Well, Don Cristóbal, we must see what steps can be taken to collect this money', and then he answered: 'I have those drafts at the Banco Territorial' and when he answered that I told him: 'Well, if you have transferred them to the Banco Territorial, then the Banco Territorial has accepted them', and then I said nothing more.''

The district court held that the delivery of the drafts in question could not be considered as the definitive payment of the debt and that since they could not be collected, the obligation subsisted. In our judgment the reasoning of the lower court is correct.

The truth is, as the plaintiff-appellee maintains in his brief answering the supplementary brief filed by the defendant-appellant, that the drafts were never converted into money. From the body of the drafts it appears that what is transferred is the balance to the favor of their drawers after the tobacco which belonged to them is liquidated, and through the evidence we know what happened.

The novation does not exist either. Before an obligation is extinguished by another one which takes its place, it is necessary that it be so expressly stated, or that the old and the new obligations be incompatible for all purposes.

The fact that the plaintiff accepted the two drafts, did not cause a change of debtor. The effect of the delivery was to leave in abeyance the plaintiff's action to claim the balance of his debt. If the drafts had been honored, the debtor's obligation would have been extinguished. They were not and could not be honored and the obligation stood. Section 1124 of the Civil Code, 1930 ed.

Since the lower court did not commit any of the errors charged to it the appeal taken against its judgment must be dismissed and the judgment affirmed.